1  **KAZEROUNI LAW GROUP, APC**
   Abbas Kazerounian, Esq. (SBN: 249203)
2  ak@kazlg.com
   245 Fischer Avenue, Suite D1
3  Costa Mesa, CA 92626
   Telephone: (800) 400-6808
4  Facsimile: (800) 520-5523

5

   Ryan L. McBride Esq. (SBN: 297557)
6  ryan@kazlg.com
   Jonathan Gil (SBN: 347431)
7  jonathan@kazlg.com
   2221 Camino Del Rio S., #101
8  San Diego, CA 92108
   Telephone: (800) 400-6808
9  Facsimile: (800) 520-5523

10

11 **KELLETT & BARTHOLOW PLLC**
   Theodore O. Bartholow, III*
12 thad@kblawtx.com
   Karen L. Kellett
13 kkellett@kblawtx.com
   11300 N. Central Expy., Suite 301
14 Dallas, TX 75243
   Telephone: (214) 696-9000
15 Facsimile: (214) 696-9001
   *Motion to appear pro hac vice forthcoming
16
   *Attorneys for Plaintiff*
17
                    **UNITED STATES DISTRICT COURT**
18                 **NORTHERN DISTRICT OF CALIFORNIA**

19 | **BARBARA PRADO, individually and** | **Case No.:** |
20 | **on behalf of all others similarly situated,** | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
21 |  | **FOR VIOLATIONS OF:** |
22 | **Plaintiffs,** | 1) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;** |
23 | v. | |
24 | **WELLS FARGO & COMPANY; and WELLS FARGO BANK, N.A.,** | 2) **CALIFORNIA PENAL CODE § 496(c);** |
25 |  | 3) **CONVERSION; and,** |
26 | **Defendants.** | 4) **UNJUST ENRICHMENT.** |
27 |  | **JURY TRIAL DEMANDED** |

28

Plaintiff Barbara Prado ("Plaintiff" or "Prado"), brings this complaint, by and through her attorneys and on behalf of all others similarly situated, against Defendants Wells Fargo & Company ("WFC") and Wells Fargo Bank, N.A. ("Wells Fargo Bank") (together, the "Defendants" or "Wells Fargo") and allege upon information and belief as follows:

## INTRODUCTION

1. This case concerns yet another scandal involving Wells Fargo—this time in the form of an undisclosed "error" relating to mortgage loan modifications of its customers.

2. Indeed, starting around June of 2024, consumers across the country began receiving one or more cryptic letters from Wells Fargo indicating that it had identified that an "error may have occurred related to your approved and finalized loan modification." The letter goes on to "apologize for any inconvenience this may have caused" and encloses a cashier's check "to make things right." Indeed, the enclosed cashier's check to Ms. Prado was in an even sum of $500.00. No explanation of the error or accounting is provided. A second letter sent by Wells Fargo to Ms. Prado only two days later included the same cryptic language and attached an additional cashier's check in the amount of $690.65.

3. Upon information and belief, Wells Fargo unilaterally overcharged tens of thousands of consumers (including Plaintiff) on their mortgage loan accounts in connection with certain modifications, and then attempted to settle these damages by sending cashier's checks to the customers without explaining the error. Indeed, it is not even clear from Wells Fargo if the "error" was an overcharge or some other servicing error.

4. It is unknown when the asserted "error" or errors occurred. Indeed, Wells Fargo's unscrupulous actions were completely concealed by Wells Fargo until about June of 2024 when Wells Fargo began disclosing the "error" or "errors" to consumers in an apparent attempt to downplay liability.

5. Not only does Wells Fargo fail to describe the error, it fails to provide any accounting or itemization to show how the error affected its customers' mortgage loan accounts. It is therefore impossible for a consumer to determine the amount of their actual damages, including their out-of-pocket harm. This is compounded by the fact that Ms. Prado received two separate letters with separate checks for different amounts within a period of two calendar days.

6. Upon information and belief, the consumers who negotiated the cashier's checks recovered only a fraction of their actual damages, which remained undisclosed, making any relief presently offered by Wells Fargo illusory and wholly inadequate.

7. On information and belief, it is believed that Defendants' representatives were unable or unwilling to tell Wells Fargo customers exactly how their accounts were overcharged and how the amount of the cashier's checks was calculated.[1]

8. Wells Fargo's flippant attempt to mitigate its liability is inadequate and has left consumers, including Plaintiff, facing ongoing harm and out-of-pocket loss that has yet to be reimbursed.

9. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

10. While many violations are described below with specificity, the Complaint alleges violations of each statute cited in its entirety.

11. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants, respectively.

**JURISDICTION AND VENUE**

12. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1693 et. Seq. and 28 U.S.C. § 1367 for supplemental state claims. Additionally, the Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (i) there is minimal diversity; (ii) Defendants are not government entities against whom the District Court may be foreclosed from ordering relief; (iii) there are more than one hundred (100) people in the putative class; and (iv) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

13. Defendants have sufficient minimum contacts with California and have otherwise intentionally availed themselves of the markets in California through the promotion, marketing, and sale of their products and services, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

14. Venue is proper in this District under 28 U.S.C. §1391(b)(2) and (3) because: (i) a substantial part of the events or omissions giving rise to these claims occurred in this District; (ii) Defendant is subject to the Court's personal jurisdiction with respect to this action because

---

[1] https://www.reddit.com/r/legal/comments/1djve08/unexpected_1000_wells_fargo_remediation_check/

CLASS ACTION COMPLAINT    - 3 -

Defendant conducts business in this judicial district; and (iii) Plaintiff resides in this judicial district.

15. Additionally, Defendant is a national banking association chartered under the laws of the United States. While it is nominally headquartered in Sioux Falls, South Dakota, Wells Fargo Bank N.A.'s principal place of business is in San Francisco, California. Wells Fargo Bank provides WFC personal and commercial banking services, is the successor by merger of Wells Fargo Home Mortgage, Inc., and is WFC's principal subsidiary.

## PARTIES

16. Plaintiff Barbara Prado is a natural person and resident of California who presently resides within this judicial district. Defendant Wells Fargo & Co. is a diversified financial services company headquartered in San Francisco, California that provides banking, insurance, investments, mortgage banking, and consumer finance through banking stores, the internet, and other distribution channels to customers, businesses, and other institutions in all 50 states and in other countries.

17. As of January 2023, Wells Fargo is the largest mortgage servicer in the country, servicing 7.3% of the market or nearly $1 trillion in loans.

18. Wells Fargo & Co. is the parent corporation of Defendant Wells Fargo Bank, N.A. Wells Fargo & Co. exercises specific and financial control over the operations of Defendant Wells Fargo Bank, N.A., dictates the policies, procedures, and practices of Wells Fargo Bank N.A., exercises power and control over the specific activities upon which the claims herein are based, and is the ultimate recipient of the ill-gotten gains described herein. Wells Fargo & Co. represents on its website that it controls and sets the standard for its loan servicing business, stating that:

> "Our aim is to serve customers at the highest standards." https://www.wellsfargo.com/about/corporate/  Wells Fargo's reputation as one of the world's great companies for integrity and principled performance depends on our doing the right thing, in the right way, and complying with the laws, rules and regulations that govern our business. We earn trust by behaving ethically and holding all employees and directors accountable for the decisions we make and the actions we take. https://www.wellsfargo.com/about/corporate/governance/#codeofconduct
>
> "As one of the world's largest financial services institutions, the work we do at Wells Fargo brings real responsibility. It requires that we act with the highest standards of trust and integrity…Wells Fargo does not tolerate unethical behavior. We are all responsible for our actions and the decisions we make, and we must hold each other accountable for the outcomes of those actions and decisions." - Charles

> W. Scharf, CEO  https://www.wellsfargo.com/assets/pdf/about/corporate/code-of-conduct.pdf
>
> "Wells Fargo is committed to engaging in fair and honest business practices and being a responsible provider of credit in all our markets." Code of conduct (above) p. 12.

19. Defendant Wells Fargo & Co. may be served with process through its registered agent, CSC – Lawyers Incorporating Service, at 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.

20. Defendant Wells Fargo Bank, N.A. is a subsidiary of Wells Fargo & Co. Wells Fargo Bank, N.A. is a national association that has its principal place of business in San Francisco, California. Wells Fargo Bank may be served with process through its registered agent, Corporation Service Company, 2710 Gateway Oaks Drive, Sacramento, CA 95833.

21. Wells Fargo Bank, N.A. conducts mortgage servicing operations through its Wells Fargo Home Mortgage division, which is headquartered in Des Moines, Iowa. Plaintiffs' mortgage loans are currently serviced by Wells Fargo Bank, N.A.

**WELLS FARGO'S HISTORY OF UNSCRUPULOUS BUSINESS PRACTICES**

22. The allegations in this lawsuit concerning Wells Fargo's targeted pattern and history of engaging in unfair and unlawful business practices at the expense of consumers and the general public are unfortunately not novel.

23. For example, in 2015, "Wells Fargo and Assurant face[d] a force-placed insurance lawsuit alleging the financial firms artificially inflated force-placed insurance premiums charged to homeowners."[2] The plaintiffs in that lawsuit alleged that "the companies provided 'unnecessary or duplicative coverage' because the policies were backdated to collect premiums when there was no lapse in coverage or no risk of loss."[3]

---

[2] Heidi Turner, *Wells Fargo Hit with Force-Placed Insurance Lawsuit*, LawyersandSettlements.com (Aug. 19, 2015, 1:30 PM), https://www.lawyersandsettlements.com/legal-news/forced-placed-insurance-lawsuits/lender-insurance-lenders-force-placed-26-20854.html.
[3] *Id.*

24. Then, in July of 2018, KTLA 5 News reported a story entitled, "*Wells Fargo Begins Refunding Customers Charged for Unauthorized Products Including Pet Insurance*,"[4] noting that "[n]ot even pet insurance is safe from Wells Fargo's scandals."

25. According to that 2018 article, "Wells Fargo refund[ed] customers who were harmed when the bank charged them for products including pet insurance, legal services, home warranties and other forms of insurance[.]"[5]

26. In December of 2022, the CFPB issued Prepared Remarks of CFPB Director Rohit Chopra on the Wells Fargo Law Enforcement Action, which noted "[i]n the CFPB's eleven years of existence, **Wells Fargo has consistently been one of the most problematic repeat offenders of the banks and credit unions we supervise** [.]"[6]

27. Director Chopra went on to note examples of the systematic financial abuses of consumers at the hands of Wells Fargo, observing that:

- In 2015, CFPB ordered Wells Fargo to pay $24 million in penalties for its role in an illegal mortgage kickback scheme.
- In 2016, it paid $4 million to the CFPB for scamming student loan borrowers. A few months later, the CFPB fined Wells Fargo $100 million for its fake account fraud.
- In 2018, the CFPB assessed a $1 billion fine for illegal fees and insurance practices in its auto lending and mortgage lending business.[7]

28. "Put simply, Wells Fargo is a corporate recidivist that puts one third of American households at risk of harm."[8]

29. Additional examples of Wells Fargo's significant customer abuses are set forth in the attached Appendix A.

---

[4] CNN Wire, *Wells Fargo Begins Refunding Customers Charged for Unauthorized Products Including Pet Insurance*, KTLA 5 News (July 19, 2018, 7:07 PM), https://ktla.com/news/local-news/wells-fargo-begins-refunding-customers-charged-for-unauthorized-products-including-pet-insurance-home-warranties/.
[5] *Id.*
[6] *Prepared Remarks of CFPB Director Rohit Chopra on the Wells Fargo Law Enforcement Action*, CFPB (Dec. 20, 2022), https://www.consumerfinance.gov/about-us/newsroom/prepared-remarks-of-cfpb-director-rohit-chopra-on-the-wells-fargo-law-enforcement-action/ (emphasis added).
[7] *Id.*
[8] *Id.*

30. Wells Fargo's unscrupulous business practices continue to the present day as evidenced by the recent disclosure of the unauthorized enrollment of consumers in various products, without the consumer's consent, which is the subject of a pending lawsuit in the Federal District Court for the Northern District of California, styled *In re Wells Fargo Unauthorized Products Litigation, et al.*, Case No. 3:24-cv-01223-TLT (LJC).[9]

31. Such practices are also unfortunately demonstrated in the instant case, where once again Wells Fargo is engaged in unscrupulous business practices in connection with errors associated with loan modifications.

32. Certain of these business practices have been the subject of class-action settlements, but the practices from which those settlements arise are not the subject of this action, which arises from different practices and a different factual predicate.

## FACTUAL ALLEGATIONS

33. Plaintiff is a natural person who resides in the County of Alameda, State of California.

34. Beginning in or around June of 2024, consumers started receiving vague letters informing them that Wells Fargo had "identified that an error may have occurred related to your approved and finalized loan modification."

35. The letter states that Wells Fargo "apologize[s] for any inconvenience this may have caused" and encloses a cashier's check "to make things right." Indeed, the enclosed cashier's check to Ms. Prado was in an even sum of $500.00. No explanation of the error or accounting is provided. As described more fully below, Ms. Prado received a nearly identical second letter from Wells Fargo only two days later, with an additional cashier's check in the amount of $690.65. Again, no explanation of the error or accounting was provided.

---

[9] This case was originally filed as *Jordan v. Wells Fargo & Co.*, No. 4:24-cv-01964-DMR in the United States District Court for the Northern District of California, but it was subsequently consolidated with six other putative class actions that raise similar allegations and claims that Wells Fargo unilaterally enrolled customers in various unauthorized financial services or products and services.

36. The letters further instructed the consumer to "[p]ease cash or deposit the check in a branch, at an ATM, or using mobile deposit at your earliest convenience."

37. The letters state that "[t]his payment is in addition to any amount we may have previously sent. Cashing this check does not waive any current or future legal claims against Wells Fargo."

38. Upon information and belief, the letters often ended with the language similar to the following:

> **Tax Information**
> Wells Fargo may be required to report some of this payment amount to the IRS. You may be responsible for any federal, state or local tax obligations associated with a portion of this payment. We recommend consulting with your tax advisor if you have any questions about potential tax liability or tax forms you may receive.
>
> **Mediation**
> If you do not feel that we have made things right, you have the option of participating in mediation. Mediation is offered when customers indicate they may have incurred additional expenses as a result of actions by Wells Fargo which have not been reimbursed. Mediation is a nonbinding dispute resolution process that is facilitated by an independent mediation service provider at no cost to you. Wells Fargo will pay all costs associated with the mediation. You are not waiving any legal claims by participating in this process. You do not waive the right or limit your ability to choose mediation by cashing the enclosed check. If you want to discuss a mediation option, please call us at the number listed below.

39. Upon information and belief, Wells Fargo unilaterally overcharged tens of thousands of consumers (including Plaintiff) on their mortgage loan accounts in connection with certain modifications, and then attempted to settle these damages by sending cashier's checks to the borrowers in hopes that they would not investigate the nature and extent of the error or pursue a remedy for same.

40. Because Wells Fargo failed to provide any accounting or explanation of the error, it is not known when Wells Fargo committed the "error" or otherwise began overcharging its customers. It is clear, however, that Wells Fargo's unscrupulous actions were completely concealed by Wells Fargo until about June of 2024 when Wells Fargo began disclosing these charges to consumers in an apparent attempt to downplay liability.

41. Because Wells Fargo omits to provide any accounting in their letters to show how the nature and extent of the error (or how it calculated the amount of compensation to the borrower),

it is impossible for a consumer to determine the amount of their actual damages, including their out-of-pocket harm.

42. Upon information and belief, the consumers who negotiated the cashier's checks recovered only a fraction of their actual damages, which remained undisclosed, making any relief presently offered by Wells Fargo illusory and wholly inadequate.

43. Upon information and belief, Wells Fargo's practice of committing errors—presumably overcharging consumers in connection with their loan modifications—and subsequent attempts by Wells Fargo to "buy off" their customers by encouraging them to accept nominal amounts in resolution of their damages, resulted in an overall financial gain for Wells Fargo.

44. Upon receiving these form letters from Wells Fargo consumers (including Plaintiff) were left with more questions than answers.

45. Upon information and belief, despite having access to more specific information concerning the borrower's account and the error committed (and the extent of each consumer's harm), Wells Fargo intentionally disseminated vague letters to discourage consumers from looking into the issue further and exercising their rights.

46. Further, the offer to engage in mediation is illusory, because it creates the appearance that Wells Fargo is willing to facilitate resolution of any dispute through a neutral party and bear all costs of such a proceeding, but it does not encourage customers to engage counsel or offer to pay any legal fees resulting from this representation.  Also, by not providing an accounting or any detail regarding the overcharges, Wells Fargo knows that its customers will likely not know how to request such information and will therefore accept the payment without any additional inquiry or dispute.  The letters do not offer any information on how customers may request such information or provide them with the address for sending Request for Information or Notices of Error under RESPA.

47. As such, these form letters are yet another attempt to limit the number of consumers that respond to these letters.

48. Upon information and belief, the purpose of these letters was not to make the consuming public whole but rather these letters are a throw away effort by Wells Fargo to attempt to shield itself from liability for yet another illegal business practice by offering an inadequate benefit.

49. Upon information and belief, Wells Fargo knew that Plaintiff and other similarly situated consumers would have no way of knowing if the amount offered was sufficient to cover the harms caused by Wells Fargo's errors.

50. Nonetheless, Wells Fargo tiptoes around the issue by putting the burden on the consumer to figure out whether the amount offered was sufficient to cover the damages caused, when Wells Fargo knows they did not.

51. Plaintiff and those similarly situated were not aware of the violations alleged herein, nor the facts giving rise to such violations, until they received the letters from Wells Fargo in June of 2024.

52. Indeed, Plaintiff first learned of the overcharges to her account on June 10, 2024, when she received a communication from Wells Fargo. Before that time, Plaintiff had no reason to suspect that Wells Fargo had committed errors or otherwise overcharged her account.

53. Plaintiff and those similarly situated did not discover and could not have discovered through the exercise of reasonable diligence, the fact that Defendants had committed errors and/or overcharged their accounts.

54. Plaintiffs are further informed and believe that Defendants intentionally concealed the complained of business practices herein for at least ten years, preventing Plaintiffs and those similarly situated from discovering these violations prior to June of 2024.

55. Fraudulent concealment tolls the statute of limitations because Plaintiffs and those similarly situated were unaware that their rights were being violated by Wells Fargo's bad acts. Indeed, Defendants' violations were carried out in a way that precluded detection of the violations.

56. As a result, the claims of Plaintiffs and those similarly situated did not accrue until their discovery in 2024 and are tolled under equitable tolling principles such that they are timely.

### *Allegations Specific to Plaintiff Barbara Prado*

57. Plaintiff Prado has two FHA mortgage loans that are serviced by Wells Fargo and are secured by her homestead property, which is located in Fremont, California.

58. Ms. Prado's primary mortgage loan has an account number ending in 4898 (the "Primary Mortgage Loan").

59. Ms. Prado entered a loan modification as to her Primary Mortgage Loan with Wells Fargo in February of 2014, which resulted in a partial claims second lien, also held by Wells Fargo.

60. Plaintiff Prado received a letter from Defendants dated June 10, 2024 (the "Prado Letter"), in substantially the same form as described herein. *See* **Exhibit A**. Specifically, the Prado Letter states that Wells Fargo has "identified that an error may have occurred related to your approval and finalized loan modification." The Prado letter indicates that it relates to an account number consistent with Ms. Prado's Primary Mortgage Loan.

61. The Prado Letter states that Wells Fargo "apologize[s] for any inconvenience this may

have caused" and encloses a cashier's check in the amount of $500.00 "to make things right." The Prado Letter did not include any accounting or other detail regarding the amount of the overcharge. *Id*.

62. The Prado Letter instructed Ms. Prado to cash or deposit the check, and it states that "[t]his payment is in addition to any amount we may have previously sent. Cashing this check does not waive any current or future legal claims against Wells Fargo." *Id*.

63. The Prado Letter included the same tax disclaimer and statement about mediation as described above. *Id*.

64. Ms. Prado received a second letter from Wells Fargo dated June 12, 2024 (the "Second Prado Letter"), a copy of which is attached as **Exhibit B**. The Second Prado Letter states (again) that Wells Fargo has "identified that an error may have occurred related to your approved and finalized loan modification." The Second Prado Letter indicates that it relates to an account number consistent with Ms. Prado's Primary Mortgage Loan.

65. The Second Prado letter states that Wells Fargo "apologize[s] for any inconvenience this may have caused" and encloses a cashier's check in the amount of $690.65. Like the initial Prado Letter, the Second Prado Letter again instructed Ms. Prado to deposit this additional check.

66. The Second Prado Letter does not contain any explanation of the error made by Wells Fargo in connection with her modification or otherwise provide any accounting as to how the amount was calculated.

**CLASS ALLEGATIONS**

67. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

68. Plaintiff seeks to represent a nationwide Class, pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) defined as:

> All persons within the United States who received at least one letter from Wells Fargo alerting them that an error occurred relating to their mortgage loan and/or modification and enclosing a payment to compensate such customer such error within the statutory time period for claims brought in this complaint.

69. Additionally, Plaintiff Prado is a member of and seeks to represent a California Sub-Class, pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), defined as:

> All persons with a residential address within California who received at least one letter from Wells Fargo alerting them that an error occurred relating to their mortgage loan and/or modification and enclosing a payment to compensate such customer for such error within the statutory time period for claims brought in this complaint.

70. Excluded from the Class and Sub-Classes are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants.

71. Further excluded from the Class and Sub-Classes are members of the judiciary to whom this case is assigned, their families, and members of their staff.

72. Plaintiff reserves the right to modify the proposed class definitions, including but not limited to expanding the Class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

73. <u>Numerosity</u>: The members of the Class and Sub-Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class and Sub-Classes consists of tens of thousands of individuals nationwide.

74. <u>Commonality</u>: There are questions of law and fact common to the Class and Sub-Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    Whether Plaintiff and the Class and Sub-Classes received a letter or letters from Wells Fargo indicating that an error may have occurred relating to their mortgage account and/or a modification;

    b.    Whether Plaintiff and the Class and Sub-Classes received a cashier's check from Wells Fargo to compensate them for purported error on their mortgage accounts or modifications;

c. Whether Wells Fargo failed to disclose the nature and extent of the error relating to the mortgage loan accounts and/or modification of Plaintiff and the Class and Sub-Classes;

d. Whether the conduct of Defendants was "unfair" as that term is defined in the UCL;

e. Whether Defendants were unjustly enriched by the complained of conduct herein;

f. Whether Defendants improperly applied consumer funds to the Plaintiff and the Class and Sub-Classes mortgage loan accounts:

g. Whether Plaintiff and the Class and Sub-Classes were damaged by Defendants, and the extent of such damages;

h. Whether Plaintiff and the Class and Sub-Classes are entitled to declaratory relief; and,

i. Whether Plaintiff and the California Sub-Class are entitled to injunctive relief.

75. <u>Typicality</u>: Plaintiff's claims are typical of those of the Class and Sub-Classes, because Plaintiff was sent a letter stating that an error was made as to her loan modification and offering a fixed sum to compensate her for the error relating to her modification without providing any detail as to that error.

76. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and Sub-Classes. Plaintiff's Counsel are competent and experienced in litigating consumer class actions similar to this action.

77. <u>Predominance</u>: Defendants have engaged in a common course of conduct toward Plaintiff and members of the Class and Sub-Classes in that Wells Fargo committed a servicing error or errors as to each of their mortgage loan accounts and/or modifications and each was offered a cashier's check to compensate them for an undisclosed amount of damages. The common issues arising from Defendants' conduct affecting Class and Sub-Class Members set out above predominate over any individual issues. Adjudication of these common issues in a single action

has important and desirable advantages of judicial economy.

78. <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class and Sub-Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class and Sub-Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class and Sub-Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

79. Defendants have acted and continue to act on grounds generally applicable to the Class and Sub-Classes, thereby making appropriate, final injunctive relief and corresponding declaratory relief, with respect to the Class and Sub-Classes as a whole.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE CALIFORNIA**
**UNFAIR COMPETITION LAW (UCL)**
**CAL. BUS. AND PROF. CODE § 17200, *ET SEQ.***
*(On Behalf of Plaintiff Prado and the California Sub-Class against Defendants)*

80. Plaintiff Prado realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

81. The UCL defines "unfair business competition" to include any "unlawful, unfair, or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

82. The UCL imposes strict liability. Plaintiff Prado need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

### *"Deceptive" Prong*

83. An omission is "deceptive" and actionable under the UCL if it is an omission of a fact that the defendant was obliged to disclose.

84. Defendants were obliged to timely disclose the extent of the "error" committed as to Plaintiff's and the Class' and Sub-Class' modification and/or mortgage loan accounts. They failed to do so.

85. Furthermore, when Defendants did disclose an error, they hid the true nature and basis for the error.

### *"Unfair" Prong*

86. A business practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practices against the gravity of the harm to the alleged victims.

87. Defendants' actions constitute "unfair" business practices because, as alleged above, Defendants intentionally and knowingly committed errors in connection with the modification and/or mortgage loan account of Plaintiff Prado and the California Sub-Class, without their knowledge or consent, and have failed to offer a proper remedy.

88. Through their practices, Defendants retained sums which should have been, in all fairness, disgorged and returned to Plaintiff Prado and the California Sub-Class.

89. The harm to Plaintiff Prado and the California Sub-Class grossly outweighs the utility of Defendants' practices as there is no utility to practices of Defendants.

90. Defendants have and will continue to surreptitiously commit undisclosed and undescribed errors (and/or overcharge consumers) in connection with loan modifications and fail to provide an adequate remedy to those harmed by such business practices. Consequently, the practices of Defendants constitute unfair and unlawful business practices within the meaning of the UCL.

91. Pursuant to the UCL, Plaintiff Prado and the California Sub-Class are entitled to preliminary and permanent injunctive relief and order that Defendants cease this unfair and unlawful competition, as well as disgorgement and restitution to Plaintiff Prado and the California

Sub-Class of all the revenues associated with this unfair and unlawful competition, or such portion of said revenues as the Court may find applicable.

92. Without a prospective injunction, Plaintiff Prado and the California Sub-Class cannot be confident that Defendants will correct its policies and practices and provide adequate relief. Indeed, Plaintiff Prado has suffered a concrete and particularized legal harm as a result of Defendants conduct. There is a sufficient likelihood that she will again be wronged in a similar way, as Defendants have failed to provide any accounting to justify the account adjustment and, absent a court order, there is nothing preventing Defendants from continuing to misapply Plaintiff Prado's payments in the future or otherwise committing undisclosed errors which result in harm to their customers.

93. Plaintiff Prado and the California Sub-Class are also entitled, and seek, public injunctive relief.

### *"Unlawful" Prong*

94. By obtaining Plaintiff and the putative class members' money in a manner constituting theft, with knowledge that the funds were stolen and/or wrongfully obtained, Defendant violated California Penal Code § 496(a).

95. Additionally, Defendant committed a conversion of Plaintiff's propery.

96. Defendant's practice of taking Plaintiff and the putative class members' money is unconscionable, oppressive, and surprising to Plaintiff and class members.

97. Because Defendant's business entailed violations of Cal. C. § 1670.5, Defendant violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*, which provides a cause of action for an "unlawful" business act or practice perpetrated on consumers.

98. Defendant violated Cal. Bus. & Prof. Code §§17200, *et. seq.* through unfair, unlawful, and deceptive business practices, Defendant violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*, which provides a cause of action for an "unlawful" business acts or practices perpetrated on consumers.

99. Defendant had other reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. The failure to do so is oppressive and harsh.

100. Plaintiff suffered actual monetary financial injury in that Plaintiff's money was taken and withheld from Plaintiff.

101. Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

102. Plaintiff seeks public injunctive relief to benefit the general public directly by bringing an end to Defendant's unlawful business practices which threaten future injury to the general public.

**SECOND CAUSE OF ACTION**
**CALIFORNIA PENAL CODE 496(c)**
*(On Behalf of Plaintiff Prado and the California Sub-Class against Defendants)*

103. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

104. On information and belief, Defendants received property—in the form of customer payments relating to a borrower's mortgage and/or modification—that was obtained in a manner constituting theft, with knowledge that the funds were stolen and/or wrongfully obtained, in violation of California Penal Code § 496(a).

105. On information and belief, Defendants also concealed, withheld, and/or aided in concealing or withholding property from the Plaintiff, knowing that the property was stolen or obtained, in violation of California Penal Code § 496(a).

106. In the case of Plaintiff, she entered into her modification in 2014. Defendants admit in their June 10, 2024 Letter and June 12, 2024 Letter that the funds were to compensate her for errors relating to her modification. Therefore, on information and belief, Defendants withheld Plaintiff's funds for over ten years before returning same.

107. Further, on information and belief, the funds offered by Defendant to Plaintiff in connection with Defendants' June 10, 2024 Letter and June 12, 2024 Letter were not sufficient to compensate Plaintiff for her damages.

108. Pursuant to California Penal Code § 496(c), Plaintiff is entitled to bring an action against Defendants for three times the amount of her actual damages. Plaintiff may also recover costs of suit and reasonable attorneys' fees.

109. Plaintiff and the California Sub-Class have been damaged by Defendants' wrongful receipt of their payments and failure to apply those funds correctly.

110. Plaintiff and the California Sub-Class have been further damaged by Defendants' failure to return those funds until June of 2024, as well as Defendants' failure to compensate Plaintiff and the California Sub-Class fully.

111. Plaintiff and the California Sub-Class are therefore entitled to recover three-times their actual damages, as well as costs of court and their reasonable attorneys' fees.

112. Defendants acted intentionally by knowingly applying funds incorrectly and failing to provide Plaintiff and the Classes with any meaningful explanation for the incorrect application.

113. The exact sum of money that was converted can be readily determined through Defendants' business records.

**THIRD CAUSE OF ACTION**
**CONVERSION**
*(On Behalf of Plaintiff and all Classes against Defendants)*

114. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

115. Defendants exercised the wrongful dominion and control over the property of Plaintiff and the Classes (*i.e.*, an identifiable sum of money that was wrongfully applied by Defendants without consent).

116. Plaintiff and the Classes have an ownership right to the possession of their funds, which Defendants converted by taking those funds, which resulted in damages.

117. Defendants acted intentionally by knowingly overcharging and failing to provide Plaintiff and the Classes with any meaningful explanation for their withholding of Plaintiff's and the Classes' funds.

118. The exact sum of money that was converted can be readily determined through Defendants' business records.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
*(On Behalf of all Plaintiff and all Classes against Defendants)*

119. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

120. Plaintiff and the Classes have conferred a benefit on Defendants by, at a minimum, having Defendants retain funds that Defendants overcharged Plaintiff's and the Classes without their consent or knowledge.

121. Defendants' practice of overcharging Plaintiff and members of the Classes without their consent also resulted in Plaintiff and members of the Classes being denied the benefit of having access to these funds.

122. Defendants appreciate and/or have knowledge of the benefits conferred upon it by Plaintiff and the Classes.

123. Under principles of equity and good conscience, Defendants should not be permitted to retain the monies they unjustly received as a result of its wrongful conduct described herein.

124. Accordingly, Plaintiff, on behalf of herself and the other members of the Classes, seek restitution and disgorgement of all amounts by which Defendants have been unjustly enriched.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against Defendants, and each of them, as follows:

- Class certification of this action (including as to the Class and Sub-Classes);
- Appointment of Plaintiff as Class Representative;
- Appointment of Plaintiff's attorneys as Class Counsel;
- Injunctive and other equitable relief as may be appropriate against Defendants as necessary to protect the interests of Plaintiff and other Class Members,
- An order prohibiting Defendants from engaging in unlawful and/or unfair acts described above;

- Public injunctive relief;
- An order of restitution and disgorgement from Defendants;
- Three times actual damages for Plaintiff and the California Sub-Class;
- An order awarding declaratory relief against Defendants declaring Defendants' conduct as unlawful;
- Statutory damages;
- Costs of Suit;
- Pre- and post-judgment interest;
- An award of reasonable attorneys' fees and costs; and
- Any other relief the Court may deem just and proper, including interest.

**DEMAND FOR TRIAL BY JURY**

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: August 13, 2024

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: */s/ Abbas Kazerounian*
Abbas Kazerounian, Esq.
Attorney for Plaintiffs

**KELLETT & BARTHOLOW PLLC**
Theodore O. Bartholow, III
*pro hac vice forthcoming*
thad@kblawtx.com
11300 N. Central Expy., Suite 301
Dallas, TX 75243
Telephone: (214) 696-9000
Facsimile: (214) 696-9001